UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**LEOPOLDO HERNANDEZ MEJIA**,                    Case No. 3:11-cv-00660-KI

                    Petitioner,                    OPINION AND ORDER

        v.

**MARK NOOTH, Superintendent, Snake
River Correctional Institution**,

                    Respondent.


        Thomas J. Hester
        Assistant Federal Defender
        101 SW Main Street, Suite 1700
        Portland, OR 97204

                Attorney for Petitioner

        Ellen F. Rosenblum
        Attorney General
        Andrew Hallman
        Assistant Attorney General
        Department of Justice

Page 1 - OPINION AND ORDER

1162 Court Street NE
Salem, OR 97301-4096

Attorneys for Respondent

KING, Judge:

Petitioner Leopoldo Hernandez Mejia, an inmate in the custody of the Oregon

Department of Corrections, brings this action, pursuant to 28 U.S.C. § 2254, seeking a writ of

habeas corpus.  For the reasons set forth below, I deny the petition.

**FACTS**

On June 9, 2006, a jury unanimously convicted petitioner of Murder, Attempted

Aggravated Murder, Robbery in the Third Degree, Assault in the Fourth Degree, and Unlawful

Possession of a Firearm.  He received a total sentence of 361 months' imprisonment.

Petitioner, who had been drinking the day of the charged events, July 9, 1992, began

arguing with his girlfriend, Terri Batson,[1] outside the Nordic Motel room where the two were

living. When Batson challenged him, saying she was going to call his boss and tell him petitioner

had been drinking, petitioner grabbed Batson's purse which held his boss' phone number.  The

two fought over the purse, moving the fight into an adjacent motel room from which Kristina

Tautfest[2] and Robert Strobel successfully ejected them.  Back in their own motel room, the strap

broke off Batson's purse and petitioner began striking Batson with the strap.  Batson's friend and

---

[1] She subsequently took the last name of Flores, but her last name was Batson at the time
of the events charged in the Indictment.

[2] Taufest went by the last name of Stallings at the time of the trial.

another motel occupant, Tammy Jennings, intervened.  She punched and kicked petitioner and was able to topple him to the motel room floor.

At that point, Stroebel pulled Jennings off of petitioner.  Both Jennings and Tautfest were standing in the motel room doorway, with Stroebel inside the room, when petitioner, in one smooth motion, rose from the ground, pulled a .22 caliber semi-automatic firearm from his right pocket, racked the slide on top of it to send a round into the chamber, and shot twice.  The first shot lodged in the room's wall.  The second shot hit Jennings in the face and she fell backward. Tautfest took off running.  Stroebel saw petitioner step over Jennings' body and fire two shots at Tautfest; one shot was never found, and the other one hit and broke the overhead motel light.

Petitioner left the scene on foot and eventually made his way to Mexico.  He was brought back to Oregon for trial after agents discovered him crossing the border back into the United States in February 2005.

The Court appointed two attorneys to represent petitioner on May 20, 2005.  About eight months later, on January 19, 2006, defense counsel, petitioner, and the government appeared before Judge Linda Bergman at defense counsel's request to address representation issues. Petitioner complained, "Well, a lot of time's passing and I don't really see that they're helping me much." Tr. 3-4.[3]  Judge Bergman explained that murder cases take time to prepare for trial. Petitioner then remarked, "Well, also they're not really explaining clearly to me what's going on with my case.  And I would really like to know how my case is going because I just don't understand." Tr. at 4.  When Judge Bergman explained more time would pass if she appointed

---

[3] The trial transcripts are submitted as Exhibits 103 to 106, but they are sequentially numbered.  Accordingly, I will not refer to the exhibit number.

new counsel, petitioner said that was "okay" and that "I just need somebody who helps me more." Tr. at 5. Petitioner wanted more time to ask them about his case and what they were working on. Defense counsel proposed to spend a week in February with petitioner, and announced a settlement conference with Judge McShane was scheduled for February 15. Judge Bergman denied petitioner's request for new counsel.

On March 1, 2006, petitioner appeared before Judge LaBarre on a motion for substitution of attorney. Defense counsel represented that they made themselves available–that they "were at the jail for as long as was necessary." Tr. 12. They had attended a settlement conference on February 15 with Judge McShane. Defense counsel reported to Judge LaBarre:

> Judge McShane saw that this request was going to be renewed by Mr. Mejia and asked me to impart to you the following. That given the current situation, settlement negotiations are not going to be very fruitful, and he added that a change of lawyer would not aid that in any way.

Tr. 13. Petitioner then explained to Judge LaBarre, "I'm seeing that my lawyers aren't really helping me." Tr. 13. When asked why, he explained he had asked for a copy of his file and had not been provided with it. He also complained they gave him conflicting advice, which made him "think they're not really doing very good work, and -- and it makes me think I need another lawyer because it seems like they're telling me lies." Tr. 14. When Judge LaBarre asked for a specific example, petitioner said every time he talks with his lawyers the amount of imprisonment time is higher. Judge LaBarre explained the State has to make an offer to settle the case and confirmed with petitioner that Judge McShane was helping him. Judge LaBarre then said,

Page 4 - OPINION AND ORDER

> Okay.  Let me just clarify something.  Obviously, this is a difficult situation for everybody.  It's hard for Mr. Mejia.  Sometimes an attorney strenuously urges that the attorney or attorneys be relieved as counsel.
>
> Frankly, I'm not sensing that now.  I'm sensing that we have a lot of confusion.  Certainly not easy to be a criminal defense attorney and to be on the receiving end of unspecified allegations, and it's a hard job.  I admire counsel on both sides, particularly defense counsel.

Tr. 16.

After determining that petitioner faced approximately 30 years in prison, Judge LaBarre explained petitioner "can't just toss lawyers aside unless there is a basis, a reason in the law. Your lawyers are very good lawyers.  You have not put forth a reason for me to fire those lawyers."  Tr. 20.  He denied the motion to substitute counsel.  After the ruling, petitioner asked, "So if we can't understand each other and get along, then how can I keep going with them? . . . We just don't understand each other."  Tr. 21.  Judge LaBarre told petitioner to "try harder" and work with Judge McShane.  Tr. 21.

On June 5, 2006, petitioner appeared for trial.  He again reported a problem with his lawyers and stated he had not requested a trial.  Judge LaBarre referenced a letter he had received from petitioner dated April 19, 2006 complaining about only one of his defense counsel, Stephen Williams.  Petitioner confirmed he was asking for new counsel "[j]ust because we haven't reached any agreement every time we talk, they always have an excuse."  Tr. 26.  Petitioner then handed Judge LaBarre a copy of a complaint he had filed in the U.S. District Court for the District of Oregon against Williams.  Williams explained that petitioner had also filed a notice of tort claim against him, dated May 24, 2006.  The other defense counsel, Christopher Howard,

speculated that he also would have been included as a defendant in the civil action and named in

the tort notice, except that petitioner could not remember his name.

After some back-and-forth with counsel, Judge LaBarre said, "But you don't believe

there's an impairment on your ability to go forward as defense counsel on this case and at trial.

Am I hearing that right?" Tr. 37-38. Howard answered:

> I'm not so sure you are, Judge. There's a comfort level here that we have –or
> discomfort level which I think we're beginning to reach, given these notices.
> Disagreements between ourselves and Mr. Mejia over strategy and things like that
> comes with the territory, and I'm always prepared to proceed, even though I
> disagree with my clients at times about those type of things.

Tr. 38. Howard asked for a recess to call Bar counsel.

Judge LaBarre explained for the record that he needed to ensure petitioner was not

attempting "to manipulate the system to avoid trial or to create what would not be a proper basis

for a setover in a trial." Tr. 40. He then read petitioner's notice of tort claim:

> This is what this says, Court Exhibit C, addressed to Mr. Williams from
> Mr. Mejia: "I'm giving notice that I've filed a civil suit in this federal courts, and
> if you need to confirm that, you may look in the public records for case number on
> or about 27 of May, 2006, or you can wait to receive this from me. Now this will
> now show a clear conflict of interest against you and we will no longer will be
> able to proceed as attorney and defendant. You defending me in the State of
> Oregon." . . . "So I feel I don't need to file motion for withdrawal of attorney
> because I'm tell you to within 15 days of this notice." And signed by Mr. Mejia,
> dated May 19, 2006.
>
> So on the face of this document, there appears to be a fairly apparent
> attempt to link the notices, the tort claim notice, the lawsuit, with withdrawal of
> counsel, substitution of counsel, that the matter that was twice denied by the
> Multnomah County Circuit Court in the past. I'm just trying to characterize the
> issue.

Tr. 40-41 (errors as in original).

The prosecutor opined it was clear to him that petitioner was trying to delay the case.  The

prosecutor had attended a judicial settlement conference with Judge Mauer and, according to the

prosecutor, petitioner

> not only didn't make any attempt to try and work with his attorneys and talk with
> the judge, he actively tried to work against them.  All he could talk about was why
> are we in front of this judge, a different judge.  Why is the prosecutor a different
> prosecutor at this time.  He's – was clearly in a delay mode in this trial.  He didn't
> want to talk about the case and he's refused to cooperate with his attorneys.

Tr. 43.  The prosecutor explained he had two witnesses in custody on material witness warrants

and one of the witnesses would have to be returned to Tennessee if the trial did not begin.

Another witness was homeless and did not live in Oregon.  The Court took a break for defense

counsel to obtain advice about how to proceed.

When the court reconvened, after a break of several hours, Judge LaBarre confirmed with

petitioner that his federal lawsuit was based on the same allegations as asserted in his tort claims

notice.  The tort claims notice alleged Williams could not remember information on the case, and

that petitioner had asked for police reports and had just received them.  Petitioner confirmed he

was illiterate and had asked different individuals in the jail to write the documents for him.

When Judge LaBarre asked him what certain statements meant in the letters, petitioner could not

tell him.

Williams then explained that his firm had hired a lawyer, to represent him in the federal

case, who had advised him to make a motion to be relieved from representing petitioner because

of the pending litigation.  Williams then so moved.  Howard pointed to the Oregon Rules of

Professional Conduct which prohibit representation of a client when there is a current conflict of

interest.  He explained the lawsuit created animosity, that he was going to be looking over his

shoulder if he continued to represent petitioner, and that the lawsuit created a significant risk of

materially limiting his representation of petitioner.  Tr. 71-72.  He then explained,

> So that you understand whenever lawsuits are filed against individuals, at least
> this is my perspective, you take it personally.  Even if we're in a no-fault
> comparative negligence state for a motor vehicle accident, if the other person files
> suit against me saying I'm at fault and I don't believe so, I'm taking that
> personally, even though it gets tossed out on its ear or settled and I have insurance
> to cover it all.  And that's the way I view lawsuits.

Tr. 75.

> Williams, in turn, stated:
>
> As far as the civil lawsuit's concerned, yeah, it does create a rift when you're
> seeing, going out first day of trial in a serious matter and some action's being
> pursued against you in federal court.  So it does affect me to a certain extent.  But
> I am concerned that, you know, that it may just be – it just may be an example of
> the breakdown of our relationship and I, you know, an extreme example of that
> would be where we end up facing that.  So I would – I would be concerned about
> the zealousness, although I certainly can go forward and competently represent
> him, Your Honor.

Tr. 76.  Williams also elaborated that the attorney with whom he had spoken "advised me that it

was pretty clear-cut under these circumstances that I needed to make a motion to withdraw[.]

And I was relying on what he told me on that."  Tr. 82.

Judge LaBarre took a 40 minute break and then announced his ruling from the bench.  He

recited the history of the case (the indictment was issued in 1992, but petitioner was not arrested

until 2005), petitioner's prior attempts to relieve counsel (as set forth above), and then

complimented the defense attorneys.  The judge noted, "A request needs to be sincere and it

needs to have merit . . . . I do not believe Mr. Mejia's request for replacement of counsel is

sincere."  Tr. 91.  The judge thought petitioner was attempting to delay the trial and did not have

any legitimate concerns about defense counsel.  Judge LaBarre then itemized the reasons

Page 8 - OPINION AND ORDER

petitioner gave for wanting new counsel and rejected them on their merits; petitioner had been

given police reports within a reasonable time, defense counsel may have stated what the

sentencing law was and petitioner did not like it, defense counsel was correct to decline to leave

discovery with petitioner when petitioner could not read it due to the need to preserve

attorney/client privilege, and communications between them had been appropriate.

> Judge LaBarre then noted:

> On something as serious – and by no means am I – these comments are not a criticism of counsel.  It's tough work being a counsel.  And counsel are very conscientious.  But in something as serious as the criminal prosecution, it is simply not enough for a defendant to put certain words on paper, even if those words on paper are handed to the clerk of the United States District Court and derail legal representation and derail a trial setting on a case that's been set down for approximately a year.

> There has to be some merit.  There can't simply be words on paper that are under a caption.  So I'm making an examination now of the – what appears on of [sic] the face of this complaint to be the meritoriousness of the claims against Mr. Williams.

> Suffice it to say that what is set forth in the tort claims notice, Exhibit B, fails to state a claim for relief.

Tr. 98.  Judge LaBarre also made the finding that petitioner "has failed to cooperate in his own

defense and has taken steps on his own to interfere with communications with counsel and has

refused to communicate with his own counsel."  Tr. 100-101.  In short, Judge LaBarre opined

that the court must look at substance over form.  He denied the attorneys' motions to withdraw

and petitioner's motion for substitute counsel.

**LEGAL STANDARDS**

Based on the stipulation of the parties, review of Claim 16(D) (the only surviving claim) is *de novo*.[4]

**DISCUSSION**

I.      Whether Petitioner's Defense Counsel were Ineffective

Petitioner argues his defense counsel were ineffective "in failing to support, or even acknowledge [petitioner's] legitimate basis for, his request that new counsel be appointed based on a conflict with trial counsel."  Am. Pet. Claim 16(D).  He suggests defense counsel "meekly" requested withdrawal and did not argue an actual conflict of interest existed that precluded their representation.  Br. in Supp. of Pet. at 14.

To prevail on a claim of ineffective assistance of counsel, petitioner must show both (1) that the attorney's performance fell below an objective standard of reasonableness; and (2) that the performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687, 688 (1984).  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, or what "might be considered sound trial strategy."  Strickland, 466 U.S. at 689.  Reasonableness is judged as of the time of counsel's conduct, not in

---

[4] On March 19, 2013, I accepted the stipulation of the parties dismissing all but Claim 16(D) in petitioner's Amended Petition for Habeas Corpus.  Respondent waived any defense based on exhaustion and procedural default as to Claim 16(D).  Respondent also waived any defense based on the statute of limitations as to Claim 16(D).  The parties agreed that because Claim 16(D) "was not decided on the merits in the Oregon State Courts . . . [it] is not subject to review under 28 U.S.C. § 2254(d)."  Petitioner otherwise expressly waived any other challenge to his conviction and sentence and agreed his remaining claims "are denied and dismissed."  Stip. 5 [41].

hindsight.  Id. at 689-90.  The reasonableness of counsel's actions "may be determined or substantially influenced by [petitioner's] own statements or actions."  Id. at 691.

Contrary to petitioner's view of the record, defense counsel apprised the court of petitioner's desire for substitute counsel each time petitioner wanted them to; the court denied each request.  The final time the issue of attorney substitution arose, after learning of the federal lawsuit petitioner had filed against Williams, defense counsel expressed reservations about continuing to represent petitioner and requested a break so they could seek guidance from the State Bar.  In addition, when they returned to court, Williams reported his firm had hired an attorney to represent him who told him he must move to withdraw from the case.  Howard similarly explained he had contacted the State Bar and felt he could no longer represent petitioner due to the conflict of interest that had developed.

Judge LaBarre considered the record, petitioner's motion, and the respective motions of each attorney, and concluded he could not accept form over substance and could not allow defense counsel to withdraw as a result of petitioner's frivolous complaint.  In the face of Judge LaBarre's ruling, there was nothing more defense counsel could have done.  See Or. Rule of Prof. Conduct 1.16 (c) ("When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.").  Petitioner has failed to persuade me that his counsel acted unreasonably.

II.     Whether Petitioner Must Show Prejudice

Petitioner argues prejudice is presumed based on the actual conflict of interest, relieving him of his obligation to show prejudice.

Page 11 - OPINION AND ORDER

A Sixth Amendment ineffective assistance of counsel claim typically requires petitioner

to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Strickland, 466 U.S. at 694.  Prejudice will be

presumed, however, when counsel has been effectively denied.  An example is when "the

defendant's attorney actively represented conflicting interests." Mickens v. Taylor, 535 U.S.

162, 166 (2002).  Such an "'actual conflict of interest for Sixth Amendment purposes, is a

conflict of interest that adversely affects counsel's performance.'" Id. at 172 n.5 (quoting

Holloway v. Arkansas, 435 U.S. 475, 482 (1978)).  A presumption of prejudice has "specifically

and explicitly" been "limited to joint representation[;]" the possibility of an extension to other

contexts remains "an open question." Earp v. Ornaski, 431 F.3d 1158, 1184-85 (9th Cir. 2005)

(discussing Mickens, 535 U.S. at 176); see also; De Jesus Estacio v. Hill, No. 06-6226-AC, 2008

WL 2536271, at *4-5 (D. Or. June 23, 2008) (bar complaint did not create an actual conflict of

interest).

A.    The Lawsuit

Before Mickens, the Ninth Circuit asserted a lawsuit "can potentially create an actual

conflict of interest[.]" United States v. Moore, 159 F.3d 1154, 1157 (9th Cir. 1998) (ineffective

assistance of counsel claim in § 2255 motion).  However, petitioner must still show that "an

actual conflict of interest adversely affected his lawyer's performance." Id.

Here, petitioner fails to point to any evidence that his attorneys' "actual interests

diverg[ed] from his own, and . . . impaired [their] ability to effectively represent him." United

States v. Nickerson, 556 F.3d 1014, 1019 (9th Cir. 2009).  To the contrary, as the prosecutor

noted, and as the Moore court suggested, petitioner's defense counsel had a strong motivation to

Page 12 - OPINION AND ORDER

effectively represent him in order to defeat any lawsuit.  Tr. 80 ("If he's not found guilty, then

obviously there probably would not be a lawsuit based on that."); Moore, 159 F.3d at 1158

(agreed no actual conflict existed when lawsuit threat was not inconsistent with attorney's "goal

of rendering effective assistance"); see also United States v. Mincey, 327 F. App'x 709, 711 (9th

Cir. 2009) ("the possibility of a future malpractice claim or later embarrassment through

collateral relief for ineffective assistance would logically motivate [an attorney] to correct

through post trial motions any ineffective assistance he might have previously rendered"); United

States v. Shwayder, 312 F.3d 1109, 1117-20 (9th Cir. 2002) (defendant must show "counsel was

influenced in his basic strategic decisions" by the conflict of interest); United States v. Baker,

256 F.3d 855, 860 (9th Cir. 2001) ("attorney has an actual, as opposed to a potential, conflict of

interest when, during the course of the representation, the attorney's and the defendant's interests

diverge with respect to a material factual or legal issue or to a course of action") (citation and

internal quotation marks omitted).

Finally, contrary to petitioner's argument, the attorneys' decision to concede petitioner

shot Jennings, and instead to focus on petitioner's mental state, is not evidence of his attorneys'

impaired performance.  Rather, it is evidence of the reality that three witnesses saw petitioner

shoot Jennings and fire shots at Tautfest, and he admitted to police that he had shot and killed

Jennings.

B.    Irreconcilable Conflict

The Ninth Circuit alternatively has determined prejudice can be presumed from "the

breakdown of a relationship between attorney and client from irreconcilable differences"

resulting "in the complete denial of counsel." Moore, 159 F.3d at 1158.  To evaluate whether

such a breakdown has occurred, the Ninth Circuit considers (1) the timeliness of the motion;

(2) the adequacy of the trial court's inquiry; and (3) the extent of conflict created.[5]

According to petitioner, Judge LaBarre neglected to excuse the prosecutor, thereby

chilling petitioner's willingness to discuss his counsel's performance.  He failed to assess the

prejudice to the State in continuing the trial, including how long a new attorney would need to

prepare and how long the material witnesses' sentences were.  He also failed to account for the

petitioner's multiple attempts to compel his attorneys to withdraw.

With respect to timing, petitioner first moved for new counsel approximately five months

before trial.  Once Judge Bergman arranged for defense counsel to spend a week in February with

petitioner, petitioner did not reiterate his objections.  Then, three months before trial, petitioner

again sought new counsel.  This time, however, defense counsel represented that Judge McShane

did not believe settlement would occur and that a change of lawyers would not make a

difference.  Petitioner's main concern appeared to be the amount of prison time he faced.  Judge

LaBarre clarified that petitioner was facing approximately 30 years and suggested petitioner work

with his attorneys.  It was not until the day of trial that petitioner moved a third time, after filing a

notice of tort claim and a federal lawsuit; the former spelled out that petitioner intended to create

---

[5] As the Moore court commented, these factors are also applicable in assessing whether the trial court erred in failing to substitute counsel.  159 F.3d at 1159 n.3.  Accordingly, I do not read petitioner's brief to address the merits of his separately alleged "Trial Court Error" claim in his Amended Petition.  Am. Pet. 15(C).  In any event, petitioner explicitly dismissed his claim alleging the trial court violated his constitutional rights when it denied his motions for substitute counsel.

a conflict of interest to obtain new counsel. Tr. 40-41. Because petitioner's second motion was timely, this factor slightly favors petitioner.

Additionally, the trial court should have entertained petitioner's complaints *ex parte*. However, Judge LaBarre's inquiry was otherwise sufficient. He heard from petitioner and both counsel about their relationship and had a "sufficient basis for reaching an informed decision." United States v. McClendon, 782 F.2d 785, 789 (9th Cir. 1986). Specifically, Judge LaBarre inquired of Howard how long it would take him to get ready to try the case without Williams, he learned about the State's cost to transport one witness from Tennessee, and another witness from Washington, and discussed petitioner's past efforts to obtain substitute counsel. Judge LaBarre's inquiry revealed that petitioner's complaints about his counsel did not indicate a complete breakdown of communication; indeed, petitioner could not explain what his tort claims notice alleged. Rather, Judge LaBarre's inquiry revealed petitioner's "'general unreasonableness or manufactured discontent.'" United States v. Smith, 282 F.3d 58, 764 (9th Cir. 2002) (quoting United States v. Walker, 915 F.2d 480, 484 (9th Cir. 1990)); United States v. Roston, 986 F.2d 1287, 1293 (9th Cir. 1993) (defendant refused to communicate with attorney; any breakdown in communication was controlled by defendant).

As for the extent of the conflict itself, the conflict was due to the fact that petitioner did not want to go to trial but would not settle the case either. As Howard explains now in an affidavit submitted by respondent,

> [Petitioner] was set on a ten year sentence, which we offered the State. The State's original offer was 15 years, and they refused to reduce their offer. In fact, I believe they increased their offer in response to Mr. Mejia's counteroffer. Although he was resistant to going to trial, Mr. Mejia was unwilling to accept the terms of the State's deal. We therefore had no choice but to go to trial.

Page 15 - OPINION AND ORDER

Ex. 132, ¶ 3.  Howard also testifies that "there was nothing about our interactions that would have led me to believe there was any conflict of interest, due to any animosity between Mr. Mejia and me or Mr. Williams, or otherwise."  Id. ¶ 4.  The crux of the inquiry is whether "a total lack of communication" prevents an adequate defense.  United States v. Shaff, 948 F.2d 501, 503 (9th Cir. 1991); United States v. Adelzo-Gonzalez, 268 F.3d 772, 780 (9th Cir. 2001) (total breakdown when attorney called client a liar; client said attorney had threatened him).  Judge LaBarre's inquiry did not reveal such a severe breakdown.  In fact, nothing in the transcript reflects petitioner refused to cooperate throughout the trial.

III.    Summary

Even if petitioner's defense counsel were deficient in some way for failing to seek withdrawal more urgently, which is not supported by the record, petitioner has the burden of showing he was prejudiced by his counsel's performance, and he has failed to meet his burden. When three witnesses testified to seeing petitioner shoot Jennings and fire shots at Tautfest, and when the only defense in play was petitioner's lack of intent, defense counsel vigorously defended petitioner in the best way they could.  Aside from the unfortunate comment petitioner's defense counsel made in closing argument that all the attorneys were "spin doctors, trying to convince you what the evidence means at this point," defense counsel persuasively highlighted the inconsistent testimony, the missed shots, and questioned the prosecution's theory of rage and jealousy.  Tr. 583.  They also made a "creative" argument in moving for judgment of acquittal of the aggravated murder charge, and they successfully obtained a judgment of acquittal of one count of Assault in the Fourth Degree.  Tr. 495, 548.  Petitioner does not point to any alternative evidence, theory, or argument they should have pursued.

Page 16 - OPINION AND ORDER

**CONCLUSION**

Based on the foregoing, the amended petition for writ of habeas corpus [18] is denied.

This proceeding is dismissed with prejudice.  Because petitioner has not made a substantial

showing of the denial of a constitutional right, a certificate of appealability is denied.  See 28

U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this ___21st___ day of May, 2014.


                                             __/s/ Garr M. King_____
                                             Garr M. King
                                             United States District Judge